UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 05-142-DLB

INSIGHT COMMUNICATIONS CO., INC.                                              PLAINTIFF

VS.                          **MEMORANDUM OPINION & ORDER**

TELECOMMUNICATIONS BOARD OF N.KY.                                    DEFENDANT

*******************************

This matter is presently before the Court upon the following motions: 1) Plaintiff's motion for partial judgment on the pleadings (Doc. #19), 2) Defendant's motion to dismiss for failure to exhaust administrative remedies (Doc. #22), 3) Plaintiff's motion for leave to deposit PEG fees into the Court (Doc. #31), and 4) Defendant's motion to dismiss Plaintiff's § 1983 claims (Doc. #57). On January 19, 2006, the Court heard oral argument on the motions. Plaintiff was represented by Laurence Zielke and Bruce Beckner; and Defendant was represented by Lawson Walker, Bill Gullett, and Monica Dias, respectively. The proceedings were recorded by official court reporter, Lisa Wiesman. The motions, being fully briefed and argued, are now ripe for adjudication.

## I.  FACTUAL & PROCEDURAL BACKGROUND

This declaratory judgment action involves a cable franchise agreement executed by Plaintiff, as franchisee, and Defendant, as the franchising authority. Plaintiff is a Delaware corporation with its principal place of business in New York. It is the general partner of Insight Kentucky Partners II, L.P., which is the franchise holder in approximately 20

1

Northern Kentucky communities that are members of Defendant. Plaintiff provides cable television and other services to these "member communities," as well as certain "non-member communities," via a single, integrated cable television system. Defendant is a government agency created by the fiscal courts of Boone and Kenton Counties in association with the 20 participating local governments ("member communities") and under the auspices of Kentucky's Interlocal Cooperation Act. Its primary responsibility is regulating the cable television franchise agreement with Plaintiff.

Through a series of transfers, Plaintiff acquired the franchise that is the subject of this case on September 14, 1999. Among other things, the franchise agreement required Plaintiff's predecessor (TCI TKR) to rebuild and upgrade its cable distribution system, in part, to achieve what the parties commonly refer to as "isolation." *See* Franchise Agreement § 45. The franchise agreement stipulated that, "[i]n the event that the Franchisee fails to achieve isolation ... within five (5) years of the Effective Date of this Franchise ... the Franchisee shall pay to the Community Programming Entity ... the sum of Twenty Thousand Dollars ($20,000.00) per year in lieu of any other remedy provided for in this Franchise." *Id*. at § 45(E). The stated purpose of such isolation was to permit any two or more "member communities" to join together in providing Public, Educational, and Governmental (PEG) access programs for its own citizens, while preventing such programs from being viewed by citizens of the "non-member communities." *Id*. According to Plaintiff, the rebuild was "substantially completed" by December 31, 1999, which was the original isolation deadline.

On April 23, 2004, Defendant unilaterally extended the deadline for achieving isolation to September 1, 2004. Later that year, on August 25, Plaintiff informed Defendant

that it would not be able to meet the September 1 deadline, and tendered payment of $20,000. Defendant rejected Plaintiff's tender on September 1, 2004. On December 21, 2004, Defendant sent Plaintiff an "Official Notice of Non-compliance," citing violations of sections 45(E), 46(M)(6), and 54 of the franchise agreement. Plaintiff responded by letter dated January 26, 2005. On May 27, 2005, Defendant sent Plaintiff a notice of hearing, set for June 29, 2005 at 6:00 p.m. On the eve of the hearing, the parties mutually agreed to a continuance pending settlement discussions. Approximately two weeks later, however, Defendant issued a second notice of hearing, set for July 20 at 7:00 p.m. Plaintiff filed the instant suit for declaratory relief on July 15, 2005. It is undisputed that Defendant held the administrative hearing on September 25, 2005, after which it found that Plaintiff is in violation of the franchise agreement. Plaintiff did not formally appear at, or participate in, the hearing.

## II. ANALYSIS

### A. Plaintiff's motion for partial judgment on the pleadings

#### 1. Legal standard

Federal Rule of Civil Procedure Rule 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay trial. When ruling on a motion for judgment on the pleadings, federal courts may look only to the facts contained in the pleadings. *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997). All well-pleaded material allegations of the non-moving party's pleadings are taken as true, and all allegations of the moving party which have been denied are taken as false. *Pension Benefit Guaranty Corp. v. Bank One, N.A.,* 34 F. Supp. 2d 608, 609 (S.D.

Ohio 1998). Judgment on the pleadings may be granted only if, on the facts as to admitted allegations, the moving party is clearly entitled to judgment. *Id.*

### 2. Discussion

Plaintiff has moved for judgment on the pleadings as to Counts 2 and 4 of its amended complaint.[1] As framed by Plaintiff, the issues are: 1) whether the franchise agreement provides any remedy other than the $20,000 annual payment for its failure to achieve isolation, and 2) whether the franchise agreement requires it to seek reimbursement from non-member communities for PEG training and production services rendered by Defendant.

The relevant portions of the franchise agreement are sections 45(E) and 46(M)(6). Those sections state, in pertinent part:

> Section 45. Upgrade of Cable Television Distribution System.
> E. Isolation. During the process of upgrading the Cable System as provided in this Section 45, Franchisee shall design and construct the Cable System in order to achieve isolation between the jurisdictional boundaries of the Local Governments and those city(ies) and/or county(ies) within the geographical confines of Kenton and Boone Counties which are not members of the Board. The intent of such isolation is to be able to permit any two or more city and county governments to join together in providing Public, Educational and Governmental (PEG) access programs for the citizens of such city(ies) and county(ies), while excluding the viewing of such programs from those city(ies) or county(ies) which have not joined the Telecommunication Board.
>
> *In the event that the Franchisee fails to achieve isolation ... within five (5) years of the Effective Date of this Franchise ... the Franchisee shall pay to the Community Programming Entity ... the sum of Twenty Thousand Dollars ($20,000.00) per year in lieu of any other remedy*

---

[1] Plaintiff sought leave to file a second amended complaint - adding violations of Kentucky's Open Records Act - on October 21, 2005. (Doc. #42). The Court granted that motion on November 23, 2005. (Doc. #56).

> *provided for in this Franchise.*
>
> Section 46. Public, Educational, Governmental, and Leased Access.
> M. Transfer of Access Functions and Funding by Franchisee.
> (6) Access Provision for Non-Participation of Telecommunications Board.
> (b) Training and Production Services. With respect to provision of training and production services to those governmental entities located in Kenton and Boone Counties not participating in the Telecommunications Board on June 1, 1997, the Authority, its designated agent and/or the Community Programming Entity will provide the same for and on behalf of the Franchisee, which has this responsibility under separate franchise agreements with such governmental entities, at the same prices and/or fees established by the Franchisee and recorded in the said franchises, which prices and/or fees are further attached hereto as Schedule 46(M)(6). The provision of these services being provided by the Authority, its designated agent and/or the Community Programming Entity will continue only until isolation of the Cable System is achieved by the Franchisee and, at that time, all such responsibility will automatically revert back to the Franchisee.

Schedule 46(M)(6), which is attached to the franchise agreement and listed in its "Table of Contents," further provides:

> All sums due under this Schedule 46(M)(6) and Section 46(M)(6)(b) of the Franchise shall be billed to Franchisee by the Community Programming Entity on a quarterly basis, and shall be paid by Franchisee within fifteen (15) days upon receipt of an invoice. All charges and rates to be paid by Franchisee hereunder are to be reimbursed by the Non-Participating Governments from their respective franchise fees paid to such governments by Franchisee.

Plaintiff argues that the $20,000 payment provision is Defendant's exclusive remedy for its failure to achieve isolation. Plaintiff analogizes the payment provision to a liquidated damages clause, which it claims is lawful in cases such as this, where damages are difficult to ascertain in the event of a breach, and the agreed-upon damages are not grossly

5

disproportionate to those actually sustained by the non-breaching party. Plaintiff also alleges that it is not required to seek reimbursement from non-member communities because Schedule 46(M)(6) was not incorporated by reference into the franchise agreement. Plaintiff claims that Defendant does not have standing on this issue; Defendant has suffered no cognizable injury because it has received all sums due; and Defendant is using the reimbursement requirement as an attempt to gain leverage over the non-member communities and force them to join the Telecommunications Board of Northern Kentucky ("TBNK").

Defendant, on the other hand, argues that the payment provision was merely an incentive for Plaintiff to achieve isolation in a timely manner, as opposed to a liquidated damages clause or an excuse for non-performance. In support, Defendant notes that section 45(E) does not contain any reference to "liquidated damages."[2] Moreover, Defendant argues that the language "in lieu of" in Section 45(E) means only that Plaintiff would be subjected to the $20,000/year penalty, rather than the penalty *plus* the $200/day sanction provided in the liquidated damages clause. With respect to the reimbursement requirement, Defendant claims that the parties intended to be bound by Schedule 46(M)(6), which was listed in the franchise agreement's "Table of Contents." Defendant claims that it has, indeed, suffered harm as a result of Plaintiff's failure to seek reimbursement from non-member communities - in the form of non-performance of the contract.

The first question presented by Plaintiff's motion is whether a particular remedy stipulated in a contract for its breach is exclusive of other remedies afforded by law.

---

[2]There is a separate liquidated damages clause in section 43(D) of the franchise agreement.

Although this question arises frequently, there is no consensus on the appropriate answer. Some general rules, however, have emerged from the case law. *See* E.H. Schopler, Annotation, *Contractual Provision as to Remedy as Excluding Other Possible Remedies*, 84 A.L.R. 2d 322. One line of cases adopts the view that the fact that a contract provides a particular remedy does not necessarily mean that such remedy is exclusive of other afforded by law; rather the question of exclusiveness turns upon the intention of the parties, as revealed by the language of the contract as a whole, the specific provisions relating to the remedy, and the particular facts of the case. *Id*. Even then, however, some courts require language that clearly indicates an intent to make the remedy exclusive. *Id*. Another line of cases adopts the view that, regardless of the intention of the parties, where a contract provides the remedy in event of a breach, such provision is exclusive of other possible remedies. *Id*.[3]

The only guidance provided by the Kentucky courts on this issue came in 1906 in the case of *Wisdom v. Nichols & Shepherd Co.*, 97 S.W. 18 (Ky. 1906). In that case, the appellant was a farmer who purchased a threshing machine from the appellee. The contract of sale contained the following warranty:

> Each machine is well made, of good material, and with proper management is capable of doing more and better work than any other machine made of like size and proportions, working under the same conditions and on the same job ... if within five days from its first use it shall fail to fill this warranty,

---

[3]See also 17A Am. Jur. 2d Contracts § 710 (stating, "[w]here a contract prescribes a remedy for a breach, that remedy is generally exclusive if the contract so declares or clearly shows the parties' intention to make it so. Where, however, there is no express or implied limitation in the contract making the stated remedy exclusive, the prevailing view is that a party may pursue either the prescribed remedy or any other remedy the law provides, although there is authority to the contrary.")

> written notice shall be immediately given by the purchaser to [appellee], by registered letter, and a written notice also to the local dealer through whom the same was received, stating particularly how and wherein it fails to fill the warranty. Reasonable time shall be allowed for the company to get to the machine with its workmen and remedy the defect, if any there be, unless it be such a nature that remedy may be suggested by letter; the purchaser to render friendly assistance and cooperation. If, after giving the notice, and opportunity to remedy the difficulty complained of has been provided, the machine complained of cannot be made to fill the warranty, it shall be returned immediately by the undersigned to the place where it was received, with the option of the company either to furnish another machine in place of the machine so returned, which shall perform the work, or return the money, and credit the notes which have been received by the company for the same with its purchase price, and thereby rescind the contract to that extent, or the whole, as the case may be, and be released from any further liability herein.

*Id*. at 19-20. The appellant discovered that the machine was defective two days after it was started, and, as provided in the contract, he notified the seller. *Id*. at 21. The seller, however, failed to remedy the defect and fulfill the warranty. *Id*. Nevertheless, the appellant continued to use the machine, and sued for damages. *Id.*

The court stated, "when the parties to a contract have agreed upon the warranties and the remedies that accrue upon a breach of them, th[o]se remedies constitute the only relief .. that the purchaser has, and he must look to his contract, and be governed by its stipulations." *Id*. The court noted that the contract afforded the appellant a remedy if the warranty was breached - he could return the machine, and demand his purchase notes, thereby canceling the contract. *Wilson*, 97 S.W. at 21. Instead, the appellant elected to retain the machine, in its defective condition, and he was obligated to pay the purchase price. *Id*.

*Wilson* is distinguishable on several grounds. First, *Wilson* involved a one-time sale of goods contract; whereas this case involves a continuing franchise arrangement. Second, the contract in *Wilson* contained an express warranty. The operative language

8

in the franchise agreement at issue in this case states that the $20,000 penalty for failure to achieve isolation is "in lieu of any other remedy *provided for in this Franchise*." The parties agree that this language is unambiguous. On its face, therefore, the contract does not indicate that the remedy is exclusive of any other remedy at law; it only indicates that it is exclusive of any other remedy stipulated in the franchise agreement (such as the liquidated damages clause). When interpreting words of an unambiguous contract provision, the words will be given their plain and ordinary meaning. *See Nationwide Mut. Ins. Co. Nolan*, 10 S.W.3d 129,131 (Ky. 1999). In the absence of any language precluding Defendant from pursuing any remedies at law for Plaintiff's alleged breach of section 45(E), Plaintiff's motion for judgment on the pleadings as to Count 2 is **denied**.

The second question presented by Plaintiff's motion relates to the terms of the franchise agreement. More specifically, the parties dispute whether Schedule 46(M)(6) was made part of the contract. Plaintiff argues that: 1) the Schedule was not signed by either party, and 2) it was not incorporated by reference into the franchise agreement. Defendant notes, however, that the Schedule was listed in the "Table of Contents" and Plaintiff accepted the agreement "as is."

Plaintiff's argument that it is not bound by the terms of Schedule 46(M)(6), specifically the reimbursement requirement, is unavailing for several reasons. First, as pointed out by Defendant, the franchise agreement's "Table of Contents" clearly lists two schedules as attachments to the contract. Second, section 46(M)(6)(b) of the franchise agreement expressly refers to Schedule 46(M)(6) and states that it is "attached hereto." The Court's own research reveals that Kentucky case law on the doctrine of incorporation

9

by reference is sparse, except in the area of insurance contracts.  Nevertheless, Kentucky courts appear to adopt (in other contexts) the general rule that:

> Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.  The incorporated matter is to be interpreted as part of the writing.

*See Twin City Fire Ins. Co. v. Terry*, 472 S.W.2d 248, 249 (Ky. 1971) *citing* 4 Williston on Contracts § 30:25 (4th ed.).  With that standard in mind, the Court concludes that Plaintiff is not entitled to judgment on the pleadings with respect to Count 4.  Plaintiff's motion is, therefore, **denied**.

### B. Defendant's motion to dismiss for failure to exhaust administrative remedies

Defendant has moved to dismiss Plaintiff's amended complaint for failure to exhaust administrative remedies.  In support, Defendant claims that Plaintiff's failure to achieve isolation constitutes a "material violation" of the franchise agreement under section 43(B), and section 43(C) specifies that, in the event of such a violation, Plaintiff shall have 30 days (after written notice is provided) to cure.  Section 43(C) continues:

> In the event the Franchisee fails to correct the enumerated condition within thirty (30) days ... the Authority shall notify the Franchisee of the time and place of a due process administrative hearing to be conducted by the Authority or its designee which shall be held not less than thirty (30) days thereafter.

Defendant, therefore, argues that: 1) the franchise agreement expressly requires an administrative hearing, 2) Kentucky law requires exhaustion as a prerequisite to judicial review, 3) Plaintiff's suit is premature, 4) it has not been afforded an opportunity to make

a full and fair determination regarding any alleged violations, and 5) to date, Plaintiff has suffered no harm (i.e., the controversy is not yet ripe).

In response, Plaintiff claims that the only purpose of convening a due process hearing would be to impose additional sanctions for its failure to isolate the non-member communities, which Plaintiff argues is impermissible under the language of the franchise agreement.  *See infra* pp. 5-9.  It is undisputed that a hearing was held on September 25, 2005.  Plaintiff, however, did not participate.  Plaintiff argues that: 1) there are no administrative remedies to exhaust with respect to the isolation issue, 2) the futility exception applies, 3) the *Harrison's Sanitarium* exception applies,[4] 4) its § 1983 and other claims are not required to be exhausted at the administrative level, 5) the hearing would be fundamentally unfair because Defendant would act as the decision-maker, and 6) it should not be required to adjudicate its claims against Defendant in an administrative forum.

Consistent with defense counsel's own representations during oral argument, the Court concludes that this case is a classic example of a situation where pursuit of an administrative process would be an exercise in futility.  The parties agree that a due process hearing was held on September 25, 2005, without participation by Plaintiff; and that as a result of that hearing, Defendant found Plaintiff to be in violation of the franchise agreement.  The Court did not suspect that a different result would obtain if it dismissed the

---

[4]In *Harrison's Sanitarium, Inc. v. Com., Dept. of Health,* 417 S.W.2d 137, 138 (Ky. 1967), the then-highest Kentucky court recognized that a "party may have direct judicial relief without exhaustion of administrative remedies when there are no disputed factual questions to be resolved and the issue is confined to the validity of applicability of a statute or ordinance."  Although relied upon by Plaintiff, the Court questions the applicability of the holding to the instant case.

case and ordered the parties to reconvene another hearing - a suspicion that was confirmed by defense counsel during oral argument. For that reason, Defendant's motion to dismiss for failure to exhaust administrative remedies is **denied**.

### C.     Plaintiff's motion for leave to deposit PEG fees into the Court

Plaintiff has filed a motion for leave to deposit the $0.49/month PEG capital surcharge that it collects from each subscriber into the Court. Consistent with its claim in Count 1 of the amended complaint, Plaintiff alleges that the funds are being misappropriated.[5] In support, Plaintiff relies on the report of its forensic accountant, which indicates that Defendant is stockpiling the money and that some of the money (approximately $125,000) has been mis-spent. Plaintiff argues that the relief sought is necessary because if it ultimately prevails on Count 1 of its complaint, Defendant would be entitled to immunity from money damages under 47 U.S.C. § 555a(a), thus precluding the availability of a refund.[6]

In response, Defendant notes that Plaintiff agreed to pay the $0.49 per month per subscriber fee in exchange for Defendant assuming the responsibility of providing PEG programming, playback services, and production and training equipment to non-member communities. Defendant claims that the fees are a "major source of funding," and to deprive it of that funding at this stage in the litigation would be inappropriate. It also argues

---

[5]In Count 1, Plaintiff claims that some or all of the PEG access fee that it collects from member communities ($0.49/month) is not being used towards capital costs. Therefore, Plaintiff alleges that the fee constitutes a "franchise fee" under 47 U.S.C. § 542(g)(2)(C), which when added to the current franchise free would exceed the statutory maximum (5% of franchisee's gross annual revenues).

[6]Section 635A(a) of the Cable Act generally prohibits suits for damages, and states that any damages are limited to injunctive and declaratory relief.

that: 1) only the subscribers, as opposed to Plaintiff, have standing to challenge any alleged misappropriation of the money, 2) Plaintiff's expert's report is not only inaccurate, but was rendered before he had reviewed all the relevant information, 3) Plaintiff's motion should be denied because there is no likelihood of eventual success on the merits on Count 1, and 4) Federal Rule of Civil Procedure 67 does not apply to a declaratory judgment action, such as this.

> Rule 67 provides, in part:
>
> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing.

Fed.R.Civ.P. 67.  In determining whether to order the deposit of a disputed fund in the court, the Court should consider the would-be depositor's likelihood of success on the merits when the motion to deposit is filed, as well as the likelihood of the would-be depositor recovering the disputed funds if the Court does not permit them to be preserved by depositing them with the Court.  *See* 26B C.J.S. *Deposits in Court* § 12 *citing Kentucky Utilities Co. v. South East Coal Co.*, 836 S.W.2d 392 (Ky. 1992) (interpreting Kentucky Civil Rule 67.01).

Plaintiff claims that from June 2000 to June 2004 it collected and remitted to Defendant approximately $1.2 million in the form PEG surcharges, which Defendant currently has in reserve.  During oral argument, however, defense counsel argued that its auditor can establish that, during that time, Defendant expended approximately $1.6 million in capital costs.  In light of Defendant's representation that it can account for the PEG

13

surcharges in dispute, the Court concludes that, at this stage, whether Plaintiff will succeed on the merits of its claim is disputed.

As for the likelihood of Plaintiff recovering the money, the Court notes that section 635A's limitation on damage awards, *see infra* note 6, would present a barrier whether the Court granted Plaintiff's motion or denied it. In other words, even if the Court granted Plaintiff's Rule 67 motion, and Plaintiff ultimately prevailed on Count 1, the Court would not be permitted to order the money be disbursed (i.e., refunded to subscribers) without running afoul of the plain language of the Cable Act. For these reasons, Plaintiff's motion for leave to deposit the PEG surcharges into the Court is **denied**.[7]

### D. Defendant's motion to dismiss Plaintiff's § 1983 claims

Finally, Defendant has moved to dismiss Plaintiff's § 1983 claims (Counts 3 and 6), on the basis of the Supreme Court's recent decision, *City of Rancho Palos Verdes, Cal. v. Abrams*, 125 S. Ct. 1453 (2005). In that case, brought under the Telecommunications Act, the Court held that where the governing statute provides a private, express remedy, the plaintiff cannot seek a more expansive remedy under § 1983. Defendant, therefore, claims that Plaintiff's remedies are limited to those provided in the Cable Act. 47 U.S.C. § 521 *et seq*.

---

[7]During oral argument, Defendant also argued that Plaintiff's Rule 67 motion should be denied because 47 C.F.R. §§ 76.942, 76.961 provide for refunds. The Court concludes, however, that those regulations are inapplicable, as they require *cable operators* to provide refunds to subscribers where the rates charged are deemed unreasonable. Although the rates charged by operators, such as Plaintiff, may also include franchise and PEG capital support fees (which can be passed-through to subscribers on a dollar-for-dollar basis), the Court nevertheless concludes that the refund regulations are inapposite because, in this case, the PEG fees at issue are being remitted to Defendant.

In Count 3, Plaintiff alleges that Defendant is attempting to regulate its rates in non-member communities by forcing it to pass on PEG fees to subscribers there, rather than allowing it to absorb those costs.[8] In effect, Plaintiff argues that Defendant is impermissibly attempting to regulate rates outside of its jurisdiction. Defendant claims that, if that is indeed the case, 47 U.S.C. § 543(a)(5) provides the appropriate remedy.[9] Plaintiff acknowledges the administrative scheme outlined in § 543, but claims that it is insufficient.

In *Rancho Palos Verdes*, the respondent sued for injunctive relief under section 332(c)(7)(B)(V) of the Cable Communications Act of 1934 and money damages under § 1983, after the petitioner-city refused to allow him to construct an antenna tower on his property for commercial use. The district court ordered the city to grant the respondent's application for a conditional-use permit, but denied his request for money damages under § 1983. *Id.* at 1457. The Court of Appeals for the Ninth Circuit reversed on the latter point,

---

[8]This count appears to be derivative of Count 4, which relates to the reimbursement requirement in the franchise agreement. While the Court has concluded that the terms of the franchise agreement include Schedule 46(M)(6), it expresses no opinion at this stage of the litigation regarding whether the reimbursement requirement contained therein is enforceable or preempted by the Cable Act.

[9]That section states:

Upon petition by a cable operator or other interested party, the Commission shall review the regulation of cable system rates by a franchising authority under this subsection. A copy of the petition shall be provided to the franchising authority by the person filing the petition. If the Commission finds that the franchising authority has acted inconsistently with the requirements of this subsection, the Commission shall grant appropriate relief. If the Commission, after the franchising authority has had a reasonable opportunity to comment, determines that the State and local laws and regulations are not in conformance with the regulations prescribed by the Commission under subsection (b) of this section, the Commission shall revoke the jurisdiction of such authority.

47 U.S.C. § 543(a)(5).

and remanded for determination of money damages and attorney's fees. *Id*. The Supreme Court granted certiorari. *Id*.

The Court began by noting that to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute at issue creates an individually enforceable right in the class of beneficiaries to which he/she belongs. *Id*. at 1458. Once that showing is made, there is a rebuttable presumption that the right is enforceable under § 1983. *Id*. citing *Blessing v. Freestone,* 520 U.S. 329, 341 (1997). The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right. *See ibid.*; *Smith v. Robinson*, 468 U.S. 992, 1012 (1984). Evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing, supra,* at 341, 117 S. Ct. 1353.

In support of its motion, Defendant alleges that, much like the statute at issue in *Rancho Palos Verdes*, section 623 of the Cable Act provides a private, express means of redress that is more restrictive than § 1983, and to which Plaintiff is limited.[10]  Plaintiff, however, claims that there is no implied right of action in favor of cable companies to enforce rate regulation provisions of the Cable Communications Policy Act, *see Nashoba Communications, Ltd. P'ship No. 7 v. Town of Danvers*, 893 F.2d 435 (1st Cir. 1990), and, therefore, its only remedy is under § 1983. In *Rancho Palos Verdes*, the Court offered the following guidance: "in *all* of the cases in which we have held that § 1983 *is* available for

---

[10]The Court used the term "restrictive" to refer to the types of remedies available (i.e., compensatory damages, attorney's fees, and costs) and the statute of limitations applicable under the statute.

16

violation of a federal statute, we have emphasized that the statute at issue ... *did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." 125 S. Ct. at 1459.

In this case, despite Plaintiff's protestations to the contrary, the statute prescribes a specific administrative remedy for impermissible rate regulation. That remedy is implicated because Plaintiff, itself, alleges that Defendant is attempting to regulate the rates for the provision of cable services to an extent greater than that allowed under section 623 of the Cable Act. Under these circumstances, the Court concludes that pursuant to 47 U.S.C. § 543(a)(5), it is the duty of the Federal Communications Commission to determine the appropriate relief. However, for purposes of the pending motion, the Court also concludes that any relief in this forum does not include redress under § 1983. Therefore, Defendant's motion to dismiss Count 3 of Plaintiff's amended complaint is **granted**.

In Count 6, Plaintiff alleges that Defendant has violated its procedural due process rights by holding a hearing in which the decision-maker was an interested party (i.e., biased). In order to survive Defendant's motion to dismiss, Plaintiff must demonstrate: 1) the deprivation of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was caused by a person acting under color of state law. *Moss v. Bierl*, 134 Fed. Appx. 806, 810 (6th Cir. 2005) *citing Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004). In this case, Plaintiff alleges a deprivation of its procedural due process rights under the Fourteenth Amendment. Therefore, the Court must conduct an additional two-step analysis. *Id.* First, the Court must "determine[ ] whether [P]laintiff has a property interest entitled to due process protection." *Id.* If the Court concludes that Plaintiff has such a protected property interest, it must then "determine what process is due" with

respect to that property right. *Id.* (quotation marks and citation omitted). As to this second element, it is essential to due process that the matter be fairly reviewed by a reasonably impartial tribunal.[11]

In this case, Plaintiff has failed to make the threshold showing that it has a property interest entitled to due process protection, or that any asserted interest has been interfered with or deprived. A property interest "can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 565 (6th Cir. 2004). In this case, the Court presumes that Plaintiff has a property interest in the franchise itself, but there is no evidence of a deprivation. Under section 43(E) of the franchise agreement, following a due process hearing and a finding that Plaintiff has committed a "material violation," Defendant may impose liquidated damages *and* revoke, terminate, or cancel the contract. There is no indication that, despite Defendant's finding at the September 25th hearing, any sanction(s) has been imposed. For this reason, Defendant's motion to dismiss Count 6 of Plaintiff's amended complaint is also **granted**.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that:

---

[11] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985); *Buckner v. City of Highland Park,* 901 F.2d 491 (6th Cir. 1990), *cert. denied,* 498 U.S. 848 (1990); *Duchesne v. Williams,* 849 F.2d 1004 (6th Cir. 1988), *cert. denied,* 489 U.S. 1081 (1989).

(1) Plaintiff's motion for partial judgment on the pleadings (Doc. #19) be, and hereby is, **DENIED**;

(2) Defendant's motion to dismiss for failure to exhaust administrative remedies (Doc. #22) be, and hereby is, **DENIED**;

(3) Plaintiff's motion for leave to deposit PEG fees into the Court (Doc. #31) be, and hereby is, **DENIED**; and

(4) Defendant's motion to dismiss Plaintiff's § 1983 claims (Doc. #57) be, and hereby is, **GRANTED**.

This 25th day of January, 2006.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\05-142.wpd